**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **J.M. HOLLISTER, LLC,** | : | |
| **Plaintiff,** | : | **Case No. 2:03-CV-703** |
| **v.** | : | **Judge Holschuh** |
| **AMERICAN EAGLE OUTFITTERS, INC.,** | : | **Magistrate Judge Kemp** |
| | : | |
| **Defendant.** | : | |
| | : | |

**MEMORANDUM & ORDER**

Clothing retailer J.M. Hollister, LLC ("Hollister") filed suit against competitor American Eagle Outfitters, Inc. ("AE") alleging violations of § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) and the Ohio Deceptive Trade Practices Act, Ohio Revised Code § 4165.02. Hollister also brought claims of common law trademark infringement and unfair competition, and common law trade dress infringement and unfair competition. All claims are based on Hollister's assertion that it has acquired the exclusive right to use the number "22" on its merchandise and that AE's use of this same number on AE merchandise infringes on Hollister's rights.

This matter is currently before the Court on several pending motions: (1) Defendant's motion for summary judgment (Record at 9); (2) Plaintiff's motion to strike the declaration of Theodore Remaklus (Record at 20); (3) Defendant's motion to strike portions of the declarations of Perry Brown and Michael Stevenson (Record at 25); and (4) Defendant's motion for leave to file a supplemental reply in support of its motion for summary judgment (Record at 31).

I.      **Background**

Hollister, a wholly-owned subsidiary of clothing retailer Abercrombie & Fitch, was established in 2000.  It opened its first store in July of 2000 and currently operates 167 stores nationwide.  (Stevenson Decl. ¶¶ 1, 3).  Hollister markets its own brand of casual clothing and accessories, reflective of the California beach and surfing lifestyle, to teens between the ages of 14 and 18.  (Id. at ¶ 3).  American Eagle is one of Hollister's strongest competitors.  It markets its own brand of casual clothing and accessories, targeting 20-year-olds.  AE, which was established in the mid-1970's, currently operates over 730 stores nationwide.  (Miller Decl. ¶ 2).

Much of the merchandise sold by Hollister and AE is adorned with various numbers, in the style of athletic uniforms.  Hollister uses at least forty-nine different numbers, but uses the number "22" on approximately 20 percent of its merchandise.  Hollister also uses the name "Lounge 22" on its website at www.hollisterco.com.  Hollister explains that the number "22" has special significance because 1922 is the fictitious year that Hollister was established. (Stevenson Decl. ¶ 6; Compl. ¶ 7).  Hollister claims that "22" is part of its "fundamental marketing concept."  Hollister further contends that it has become "widely known and recognized by its usage of 22" and this number is "universally associated with Hollister." (Compl. ¶ 9).  Hollister claims to have acquired common law rights and secondary meaning in the number "22" and claims to be entitled to trademark protection.  (Id. at ¶ 8).

Hollister objects to AE's use of the number "22" on AE's merchandise.  On May 20, 2003, an attorney for Hollister wrote to AE accusing AE of misappropriating intellectual property.  He claimed that AE's use of the number "22" was designed to create a likelihood of confusion among consumers as to the source of the merchandise, and constituted deliberate and

2

intentional common law trademark infringement, unfair competition, false designation of origin, and a violation of the Lanham Act.  Counsel for Hollister demanded that AE immediately discontinue all use of the number "22."  (Ex. 3 to Compl.).

On June 13, 2003, an attorney for AE responded to that letter.  He claimed that it was AE's opinion that AE's use of the number "22" did not constitute trademark infringement, unfair competition, or false designation of origin.  AE denied that Hollister had established any trademark rights in the number "22."  Counsel also noted that AE's use of the number "22" was merely ornamental and was not perceived by consumers as a trademark.  In addition, because the number was consistently used in conjunction with the "American Eagle Outfitters" trademark, there could be no consumer confusion as to the source of the goods.  Counsel further noted that many other clothing retailers also use the number "22" on their clothing.  (Ex. 4 to Compl.).

On August 6, 2003, Hollister filed the pending action against AE, alleging violations of § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), and the Ohio Deceptive Trade Practices Act, Ohio Revised Code § 4165.02.  Hollister also brought claims of common law trademark infringement and unfair competition, and common law trade dress infringement and unfair competition.  On November 6, 2003, Defendant moved for summary judgment.  Before the Court addresses the merits of that dispositive motion, it must rule on several evidentiary motions that have been filed in connection with it.

## II.     Evidentiary Motions

### A.     Plaintiff's Motion to Strike Theodore Remaklus' Declaration

In support of its motion for summary judgment, AE submitted the declaration of its attorney, Theodore Remaklus, along with fifty-five exhibits.  The sole apparent purpose of the

declaration was to authenticate those exhibits.  Remaklus stated that he had attached true and

correct copies of: photographs and web pages downloaded from the parties' websites;

photographs of merchandise purchased from Hollister, AE, and other retail stores; press releases

and other publications of Abercrombie & Fitch; photo excerpts from AE annual reports; pages

from AE catalogs; photographs and other publications showing NFL football players Emmitt

Smith and Duce Staley, and race car driver Bill Davis, all of whom wear the number "22" on

their uniforms; newspaper and magazine articles commenting on Hollister's lawsuit; and several

trademark applications that have been filed with the United States Patent and Trademark Office

("USPTO").

Plaintiff has moved to strike Mr. Remaklus' declaration and all attached exhibits,

claiming that they do not comply with the requirements set forth in Fed. R. Civ. P. 56(e).

Plaintiff concedes that it is not necessarily inappropriate for an attorney to submit an affidavit

authenticating exhibits to be considered in connection with a motion for summary judgment.

Plaintiff contends, however, that such an affidavit must be based "on personal knowledge, shall

set forth such facts that would be admissible in evidence, and shall show affirmatively that the

affiant is competent to testify to the matters stated therein."  Fed. R. Civ. P. 56(e).  Plaintiff urges

the Court to strike all of the exhibits attached to Remaklus' declaration, complaining that they

are inadmissible hearsay.  Defendant contends that these exhibits are admissible either as party

admissions or public records, or do not constitute hearsay because they are not offered for the

truth of the matter asserted.

The Court finds that all of the exhibits have been properly authenticated and are

admissible, at least for a limited purpose.  None of the photographs, including those taken from

the parties' catalogs and those downloaded from various websites, constitutes hearsay.  Hearsay is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."  Fed. R. Evid. 801(c).  A "statement" is further defined as either an "oral or written assertion" or "nonverbal conduct of a person, if it is intended by the person as an assertion."  Fed. R. Evid. 801(a).

"In the context of the hearsay rule, photographs do not qualify as assertions."  5 Joseph M. McLaughlin, Weinstein's Federal Evidence § 801.10[2][a] (2d ed. 2004).  See also United States v. May, 622 F.2d 1000, 1007 (9th Cir. 1980)(holding that a photograph is not an assertion).  Furthermore, the Sixth Circuit has held that "[p]hotographs are admissible as long as what they purport to depict is relevant to the issues and substantial identity to relevant times and conditions is established."  Shahid v. City of Detroit, 889 F.2d 1543, 1545 (6th Cir.1989).  In this case, the photographs are certainly relevant to the issue of trademark infringement.  Mr. Remaklus' declaration supplies the necessary information concerning the relevant publication dates of the catalogs and the dates on which the photos were taken or the pictures downloaded.[1]

All representations contained in statements downloaded from Hollister's website and statements made by Hollister employees in the magazine article attached as Exhibit 13 are admissible as admissions of a party-opponent under Fed. R. Evid. 801(d)(2).  Public records maintained by the USPTO are admissible pursuant to Fed. R. Evid. 803(8).

AE has also submitted numerous newspaper and magazine articles and editorials commenting on the "frivolous" nature of this lawsuit.  Hollister is correct that these articles are

---

[1]  To the extent some of these pictures have accompanying text, that text is largely irrelevant and will not be considered by the Court.

inadmissible if offered to prove the truth of the matters asserted therein.  Defendant, however,

claims that it offers these articles not to prove that the suit is frivolous, but to support its claim

that consumers have not come to associate the number "22" with Hollister, and that Hollister has

failed to establish secondary meaning.  Several of the authors comment that when they see the

number "22," they are much more likely to think of NFL running back Emmitt Smith than of

Hollister.  The Court finds that this unsolicited media coverage may be considered for the limited

purpose of determining whether Hollister has acquired secondary meaning in the number "22."

See Herman Miller, Inc. v. Palazzetti Imports and Exports, Inc., 270 F.3d 298, 313 (6th Cir.

2001)(holding that the district court erred in not considering evidence of unsolicited media

coverage in determining whether secondary meaning had been established).

For these reasons, the Court denies Plaintiff's motion to strike Theodore Remaklus'

Declaration and the attached exhibits.

**B.** **Defendant's Motion to Strike Portions of Perry Brown's and Michael Stevenson's Declarations**

In support of its memorandum in opposition to Defendant's motion for summary

judgment, Plaintiff submitted declarations of Perry Brown, Hollister's Art Director in charge of

Merchandise Graphics, and of Michael Stevenson, Hollister's Vice President Finance and

Treasurer.  Defendant has moved to strike paragraphs 7 and 10 of Stevenson's declaration and

paragraphs 8, 9 and 10 of Brown's declaration.

Paragraph 7 of Michael Stevenson's declaration states, "[d]ue to Hollister's extensive

advertising, promotion and sales of goods bearing the trademark 22 through its stores, catalog

and on the Internet, the trademark 22 has acquired secondary meaning and goodwill of

inestimable value."  (Stevenson Decl. ¶ 7).  Paragraph 10 of Stevenson's declaration states:

In my opinion, AE's use of the identical number 22, on substantially similar garments, at similar price points, sold to the same class of purchasers, i.e., teenage boys and girls, through the same channels of trade is likely to cause confusion. Moreover, in my opinion, AE's adoption of 22 knowing of Hollister's use of 22 as Hollister's trademark together with surfing images was deliberate and intentional.

The allegedly offending paragraphs of Perry Brown's declaration read as follows:

8.     I have reviewed the declaration of Michael J. Stevenson, which indicates that in its very first year, Hollister's sales were in excess of $7.8 million. By 2002, Hollister's sales were approximately $150 million.  To date, Hollister's sales have totaled nearly $500 million.  Hollister has sold approximately $20 million of clothing bearing the trademark 22 since its inception in 2000.  Specifically, from July to November 2003, Hollister sold $6 million worth of clothing bearing the trademark 22.  In addition, since its establishment in 2000, Hollister has expended in excess of $4 million on advertising and promotion and Hollister has expended approximately $1 million on advertising and promoting is trademark 22.

9.     In my opinion, which is based on my twenty years of experience in marketing in the retail industry and the foregoing financial information, since its inception in July, 2000, Hollister customers and the public have come to associate HOLLISTER CO. with the California beach and surfing image and as a source for such goods in the marketplace, including Hollister's 22 merchandise.  Specifically, in my opinion, Hollister customers and the public have come to associate Hollister's trademark 22 as a means of indicating Hollister as the source and origin of the merchandise on which it is used.

10.    I have examined AE's usage of 22 and, in my opinion, it is substantially similar, if not identical, to Hollister's use of its 22 trademark.  In addition, since Hollister's image is that of a beach and surfing lifestyle company, AE's use of 22 together with a surf board on a graphic t-shirt with the words "AE SURF CO." on a cap . . . are further evidence of AE's intentional copying as well as its attempt to trade upon Hollister's goodwill.  As a result, I do not believe that consumers would perceive any significant difference between Hollister's use of 22 and AE's use of 22, and are likely to be confused as to the source or origin of AE's clothing bearing the number 22.

(Brown Decl. ¶¶ 8-10).

It is Defendant's contention that these portions of Brown's and Stevenson's declarations

7

fail to comply with the requirements set forth in Fed. R. Civ. P. 56(e) because they are not based on personal knowledge and because neither Hollister employee is competent to testify as to these particular matters.  To the extent that these are offered as lay opinions, Defendant questions how Hollister's art director or financial officer would have personal knowledge that consumers have come to associate the number "22" with Hollister, that AE copied surf themes and the number "22" from Hollister, or that consumers are likely to be confused as to the source of AE's merchandise.  Defendant further notes that paragraph 8 of Brown's declaration indicates that his knowledge concerning Hollister's sales and its advertising budget comes only from reading Stevenson's declaration.  In addition, Defendant argues that Stevenson fails to state how he has personal knowledge that the number "22" has acquired secondary meaning or that AE intentionally copied Hollister's use of the number "22."

Hollister contends that it seeks to admit these statements as expert witness testimony pursuant to Fed. R. Evid. 702.  Hollister contends that Brown and Stevenson have specialized knowledge based on their past experience in the retail clothing industry and are, therefore, qualified to give expert opinions on these matters.  Fed. R. Evid. 702 states as follows:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

In reply, Defendant does not deny that Brown and Stevenson have acquired specialized knowledge in the retail clothing industry.  However, Defendant claims that this knowledge does not qualify either Brown or Stevenson to render expert opinions on whether, in the context of a

trademark infringement claim, "22" has acquired a secondary meaning, whether consumers are likely to be confused as to the source of the goods, or whether AE intentionally copied from Hollister. The Court agrees.

As the Sixth Circuit noted in Berry v. City of Detroit, 25 F.3d 1342 (6th Cir. 1994), "[t]he issue with regard to expert testimony is not the qualifications of a witness in the abstract, but whether those qualifications provide a foundation for a witness to answer a specific question." Id. at 1351. Hollister has failed to show how either Brown or Stevenson is qualified, by way of past experience, to render an expert opinion on the effect of advertising and sales on the creation of secondary meaning, whether there is a likelihood of confusion as a result of the use of competing trademarks, or whether a trademark has been copied.[2] In addition, neither Brown or Stevenson explains the reasoning or analysis behind the conclusion that the number "22" has acquired secondary meaning and that the public has come to associate that number with Hollister. For these reasons, the statements are not admissible as expert testimony.

Neither are these statements admissible as lay opinions under Fed. R. Evid. 701. That rule requires such opinions to be "rationally based on the perception of the witness" and "helpful to a clear understanding of the witness' testimony or the determination of a fact in issue." Again, Hollister has failed to lay a foundation to explain how either Mr. Brown or Mr. Stevenson obtained first-hand knowledge that "22" has acquired secondary meaning, that there is a

---

[2] Hollister appears to argue that because Mr. Stevenson is qualified to testify concerning Hollister's sales figures and advertising budget, and these are factors to be considered in determining whether a mark has acquired secondary meaning, then Stevenson should also be considered qualified to render an opinion about that ultimate issue, i.e., whether the mark has acquired secondary meaning. But one does not necessarily follow the other.

likelihood of confusion among consumers, or that AE copied Hollister's alleged trademark.

For the foregoing reasons, the Court grants Defendant's motion to strike paragraphs 8-10 of Perry Brown's declaration and paragraphs 7 and 10 of Mr. Stevenson's declaration.

### C. Defendant's Motion for Leave to File a Supplemental Reply in Support of its Motion for Summary Judgment

Shortly after it filed this suit, Hollister submitted an application for registration of its trademark "22" to the USPTO.  That application was still pending when the parties filed their briefs in connection with the motion for summary judgment.  On March 4, 2004, the USPTO denied Hollister's trademark application.  (Ex. 2 to Supp. Decl. of Remaklus).  Thereafter, AE moved for leave to file a supplemental reply in support of its motion for summary judgment to address the impact of the trademark examiner's decision.  AE appended to that motion a copy of its proposed reply memorandum; attached as exhibits were the relevant documents from the USPTO denying Hollister's trademark application.

Hollister then filed a memorandum in opposition to Defendant's motion for leave to file a supplemental reply.  Hollister first argued that AE improperly appended its supplemental reply to the motion and filed it before the Court found good cause and granted leave to do so.  Hollister then went on to respond to the merits of the arguments raised in AE's attached supplemental reply brief.  In response, AE noted that the Court's local rules governing electronic filing require a party seeking leave to file a document to attach a copy of the proposed document to the motion. In addition, since Hollister had already addressed the substantive arguments raised in the supplemental reply memorandum, AE responded to them.

In the Court's view, AE has established good cause for allowing the filing of a supplemental reply brief.  The fact that Hollister's trademark application has been initially

10

denied is relevant to the pending motion for summary judgment, as are the trademark examiner's reasons for denying that motion.  Upon good cause shown, Defendant's motion for leave to file a supplemental reply is granted.

Normally, the Court would now instruct Defendant to file its supplemental reply brief and would give Hollister the opportunity to respond.  In this case, however, since both parties have already addressed the merits of that supplemental reply in their briefs filed in connection with the motion for leave to file the supplemental reply, the Court sees no need for the parties to re-file these documents.  The parties' arguments are already before the Court and will be considered in connection with the motion for summary judgment.

## III.    Defendant's Motion for Summary Judgment

The Court notes that the parties have requested oral argument on the pending motion for summary judgment.  However, in the Court's view, there is no need for oral argument.  The parties have briefed the issues very thoroughly and have submitted voluminous exhibits for the Court's consideration.  Because the Court finds that oral argument is not essential for fair resolution of this motion, the request is denied.  <u>See</u> S.D. Ohio Civ. R. 7.1(b)(2).

### A.    Standard for Granting Summary Judgment

Federal Rule of Civil Procedure 56(c) provides:

[Summary judgment] . . . shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

"[T]his standard provides that the mere existence of <u>some</u> alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no <u>genuine</u> issue of <u>material</u> fact."  <u>Anderson v. Liberty Lobby, Inc.</u>,

477 U.S. 242, 247-48 (1986) (emphasis in original); <u>Kendall v. Hoover Co.</u>, 751 F.2d 171, 174 (6th Cir. 1984).

Summary judgment will not lie if the dispute about a material fact is genuine; "that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." <u>Anderson</u>, 477 U.S. at 248.  The purpose of the procedure is not to resolve factual issues, but to determine if there are genuine issues of fact to be tried.  <u>Lashlee v. Sumner</u>,  570 F.2d 107, 111 (6th Cir. 1978).  Therefore, summary judgment will be granted "only where the moving party is entitled to judgment as a matter of law, where it is quite clear what the truth is . . . [and where] no genuine issue remains for trial, . . . [for] the purpose of the rule is not to cut litigants off from their right of trial by jury if they really have issues to try."  <u>Poller v. Columbia Broadcasting Sys.</u>, 368 U.S. 464, 467 (1962) (quoting <u>Sartor v. Arkansas Natural Gas Corp.</u>, 321 U.S. 620, 627 (1944)); <u>accord</u> <u>County of Oakland v. City of Berkley</u>, 742 F.2d 289, 297 (6th Cir. 1984).

In making this inquiry, the standard to be applied by the Court mirrors the standard for what was formerly referred to as a directed verdict.  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986); <u>Anderson</u>, 477 U.S. at 250.

> "The primary difference between the two motions is procedural; summary judgment motions are usually made before trial and decided on documentary evidence, while directed verdict motions are made at trial and decided on the evidence that has been admitted."  <u>Bill Johnson's Restaurants, Inc. v. NLRB</u>, 461 U.S. 731, 745, n.11 (1983).  In essence, though, the inquiry under each is the same: whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.

<u>Anderson</u>, 477 U.S. at 251-52.  Accordingly, although summary judgment should be cautiously invoked, it is an integral part of the Federal Rules, which are designed "to secure the just, speedy and inexpensive determination of every action."  <u>Celotex</u>, 477 U.S. at 327 (quoting Fed. R. Civ.

12

P. 1).   In a motion for summary judgment the moving party bears the "burden of showing the absence of a genuine issue as to any material fact, and for these purposes, the [evidence submitted] must be viewed in the light most favorable to the opposing party."  Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970) (footnote omitted); accord Adams v. Union Carbide Corp., 737 F.2d 1453, 1455-56 (6th Cir.), cert. denied, 469 U.S. 1062 (1984).  Inferences to be drawn from the underlying facts contained in such materials must also be considered in the light most favorable to the party opposing the motion.  United States v. Diebold, Inc., 369 U.S. 654, 655 (1962); Watkins v. Northwestern Ohio Tractor Pullers Ass'n, 630 F.2d 1155, 1158 (6th Cir. 1980).  Additionally, "unexplained gaps" in materials submitted by the moving party, if pertinent to material issues of fact, justify denial of a motion for summary judgment.  Adickes, 398 U.S. at 157-60.

If the moving party meets its burden and adequate time for discovery has been provided, summary judgment is appropriate if the opposing party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial.  Celotex, 477 U.S. at 322.  The existence of a mere scintilla of evidence in support of the opposing party's position is insufficient; there must be evidence on which the jury could reasonably find for the opposing party.  Anderson, 477 U.S. at 252.

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.  If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Fed. R. Civ. P. 56(e).

**B.      Relevant Law**

Hollister has alleged that AE has violated § 43(a) of the Lanham Act.  That section of the

statute creates a civil cause of action for trademark and trade dress infringement.  It provides, in

relevant part:

> **(1)** Any person who, on or in connection with any goods or services, or any
> container for goods, uses in commerce any word, term, name, symbol, or device,
> or any combination thereof, or any false designation of origin, false or misleading
> description of fact, or false or misleading representation of fact, which–
>
> **(A)** is likely to cause confusion, or to cause mistake, or to deceive as to the
> affiliation, connection, or association of such person with another person, or as to
> the origin, sponsorship, or approval of his or her goods, services, or commercial
> activities by another person . . .
>
> shall be liable in a civil action by any person who believes that he or she is or is
> likely to be damaged by such act.

15 U.S.C. § 1125(a).

Even though Hollister has brought three other causes of action – one based on a violation

of Ohio's Deceptive Trade Practices Act, and two based on common law trademark and trade

dress infringement -- the parties agree that all of these claims are subject to the same analysis.

See Abercrombie & Fitch Stores, Inc. v. American Eagle Outfitters, Inc., 280 F.3d 619, 626 n.2

(6th Cir. 2002)(noting that, in Ohio, federal and state law claims of trademark infringement and

unfair competition are subject to the same analysis); Degidio v. West Group Corp., 191 F. Supp.

2d 904, 910 (N.D. Ohio 2002)(noting that Deceptive Trade Practices Act claims are subject to

the same analysis as § 43(a) claims); Herman Miller, 270 F.3d at 308 n.2, 313 n.6 (noting that

trade dress claims are analyzed in the same way as trademark claims).

In order to succeed on any of its claims, Hollister is required to establish five elements:

14

(1)     ownership of a specific trademark in connection with specific goods;
(2)     continuous use of the trademark;
(3)     use of the mark by both plaintiff and defendant as a trademark;
(4)     establishment of secondary meaning if the mark is descriptive;
        and
(5)     a likelihood of confusion among consumers due to the contemporaneous use of the
        parties' trademarks in connection with the parties' respective goods.

See Homeowners Group, Inc. v. Home Marketing Specialists, Inc., 931 F.2d 1100, 1105 (6th Cir.

1991); Rock and Roll Hall of Fame and Museum, Inc. v. Gentile Prods., 134 F.3d 749, 753 (6th

Cir. 1998).  To succeed on its trade dress claims, Hollister must also prove that the alleged trade

dress is primarily "nonfunctional."  See 15 U.S.C. § 1125(a)(3).

        **C.     Discussion**

        As noted above, on March 4, 2004, the USPTO issued an initial decision denying

Hollister's trademark application for the number "22."  Nevertheless, the parties agree that

trademark registration is not a prerequisite, and the USPTO's denial does not prevent Hollister

from pursuing its claims of trademark and trade dress infringement.  See Two Pesos, Inc. v. Taco

Cabana, Inc., 505 U.S. 763, 768 (1992)(noting that § 43(a) also protects qualifying unregistered

trademarks).

        Defendant claims to be entitled to summary judgment because: (1) Hollister cannot show

that either party has made a trademark use of the number "22;" (2) Hollister cannot show that the

number has developed secondary meaning such that consumers identify the number "22" with

Hollister; and (3) Hollister cannot show any likelihood of confusion as a result of AE's

ornamental use of the number "22" on its clothing.  Plaintiff claims that genuine issues of

material fact on each of these issues preclude summary judgment.

        **1.     Trademark Use of "22"**

15

A "trademark" is defined as "any word, name, symbol, or device, or any combination thereof," which serves "to identify and distinguish [the] goods [of the mark's owner] ... from those manufactured or sold by others and to indicate the source of the goods, even if that source is unknown."  15 U.S.C. § 1127.[3]  The parties agree that it is possible for a number to be protected as a trademark.  For example, in GTFM, Inc. v. Solid Clothing, Inc., 215 F. Supp. 2d 273 (S.D.N.Y. 2002), the court found that plaintiff's trademark, "05," used on various football and baseball jerseys, was valid and that defendant had infringed the trademark.  See also 1 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition, § 7:14 (4th ed. 2001)(citing cases); Kevin Reddick Decl. ¶ 6 (Ex. C to Pl.'s Mem. Opp'n Mot. Summ. J.)(listing numbers registered with the USPTO).

In order to establish a claim of trademark infringement, Hollister must show that both Hollister and AE use the number "22" as a trademark.  See Rock & Roll, 134 F.3d at 753.  AE contends that both parties use the number "22" in an ornamental manner rather than as a trademark.  The mere fact that a mark is used in an ornamental manner does not necessarily preclude a finding that it is also used to indicate a source and may, therefore, be entitled to trademark protection.  See WSM, Inc. v. Tennessee Sales Co., 709 F.2d 1084, 1087 (6th Cir. 1983).  However, in order to constitute a trademark use, a mark must "create 'a separate and distinct commercial impression, which . . . performs the trademark function of identifying the source of the merchandise to the customers.'"  Rock & Roll, 134 F.3d at 753 (quoting In re

---

[3]  "Trade dress," on the other hand, is a broader term and involves "the total image of a product."  It protects certain aspects of packaging and product design.  See Vision Sports, Inc. v. Melville Corp., 888 F.2d 609, 613 (9th Cir. 1989).

Chem. Dynamics, Inc., 839 F.2d 1569, 1571 (Fed. Cir. 1988)).

In Rock & Roll Hall of Fame, plaintiff sued a photographer for trademark infringement. The Hall of Fame contended that its building design was a trademark and that defendant's photograph of the building was likely to cause consumer confusion as to the source or sponsorship of that photograph because the Hall of Fame Museum also sold posters and postcards with photographs of various views of the building.

The Sixth Circuit rejected the claim that the Museum used its building design as a trademark.  Id. at 754.  The Court noted, "although the Museum has used drawings or pictures of its building design on various goods, it has not done so with any consistency."  Id. at 755. Instead, the building is portrayed from various angles and viewpoints.  Noting that "[c]onsistent and repetitive use of a designation as an indicator of source is the hallmark of a trademark," the Court concluded that the Museum's "disparate uses of several different perspectives of its building design" did not "create a consistent and distinct commercial impression as an indicator of a single source of origin or sponsorship."  Id.

In another case that is perhaps more similar to the case at hand, MicroStrategy, Inc. filed suit against Motorola, Inc., claiming that Motorola was infringing on its trademark phrase "Intelligence Everywhere."  MicroStrategy, Inc. v. Motorola, Inc., 245 F.3d 335 (4th Cir. 2001). The Fourth Circuit noted that although MicroStrategy had used the phrase in annual reports, press releases, brochures, sales presentations, a product manual, a business card, and newspaper articles, it followed no particular design, pattern, or sequence.  MicroStrategy had not consistently placed the phrase "on a particular part of the page, or in a particular type, or labeled it with 'TM,' or consistently used a distinctive font, color, typeset or any other method that

makes 'its nature and function readily apparent and recognizable without extended analysis.'" Id. at 341-42 (internal footnote and quotation omitted).  The Court therefore concluded that MicroStrategy had not provided a basis for finding that it had made a trademark usage of the phrase.  Id. at 343.

After reviewing the photographs of merchandise submitted by the parties, the Court concludes that no reasonable jury could find that either party has made a trademark use of the number "22."  Neither party uses the number "22" in a consistent, stylized manner.  The parties use the number in a wide variety of sizes, fonts, and colors, and in conjunction with a wide variety of other graphics.  In addition, they place the number at various places on their merchandise.  Neither party creates a "consistent and distinct commercial impression" that would cause a consumer to look at merchandise bearing the number "22" and automatically identify either Hollister or AE as the source of that merchandise.  As AE notes, Hollister uses the number "22" in exactly the same ornamental fashion that Hollister uses at least forty-nine other numbers.  There is simply no logic to the argument that Hollister's use of "22" constitutes a trademark use, but Hollister's use of other numbers does not.

Furthermore, Hollister presents little, if any, evidence to support a finding that AE makes a trademark use of the number "22."  In fact, Hollister's claims regarding the nature of AE's use of the number "22" are quite inconsistent.  On page 19 of its memorandum in opposition to the motion for summary judgment, Hollister appears to argue that AE's use of "22" constitutes a trademark use for the same reasons Hollister's use of "22" does, and that this "is a disputed factual issue."  (Mem. Opp'n at 19).  However, on page 7 of that same brief, Hollister states that Hollister's use of "22" qualifies for treatment as a trademark, but "AE's collateral use of 22 is

18

merely ornamental and should not be considered as a protected trademark of AE."

After carefully reviewing the evidence of record, the Court concludes that no reasonable jury could find that either Hollister or AE uses the number "22" as a trademark.  Both parties use the number in a strictly ornamental manner.  As to Hollister's use of the number "22," this is the same conclusion reached by the USPTO's trademark examiner in issuing the initial denial of Hollister's trademark application.  She concluded that "the public would perceive the proposed mark merely as a decorative or ornamental feature of the goods and not as an indicator of the source of the goods." (Ex. to Supp. Decl. of Remaklus).  Hollister notes that this is only an initial denial and that the USPTO has made no final determination of registrability.  Citing Decatur Federal Savings & Loan Association v. Peach State Federal Savings & Loan Association, 203 U.S.P.Q. 406, 411 n.6 (N.D. Ga. 1978), and Carter-Wallace, Inc. v. Procter & Gamble Co., 434 F.2d 794, 802 (9th Cir. 1970), Hollister argues that this initial determination is inconclusive and should not be considered persuasive.  AE concedes that the USPTO's determination, even once final, is not binding on the Court, but argues that the Court may nevertheless consider it in deciding whether Hollister has established a trademark usage.

In the Court's view, this issue is so clear-cut that it would reach the same decision whether or not it considered the trademark examiner's opinion.  Nevertheless, because of the trademark examiner's expertise in this field, the Court is encouraged by the fact that the examiner reached the same conclusion.  Since no reasonable jury could find that either Hollister or AE made a trademark use of the number "22," Defendant is entitled to summary judgment on all of Plaintiff's claims.  Even if Hollister had presented sufficient evidence from which a reasonable jury could find that both parties made a trademark use of the number "22," AE would

19

still be entitled to summary judgment because Hollister has not satisfied its burden of proof with respect to the issue of whether "22" has acquired secondary meaning.

### 2. Secondary Meaning

The parties agree that "22" is a descriptive term, signifying the fictitious year in which Hollister was formed, and that Hollister must therefore show that the number has acquired secondary meaning.  See Degidio, 191 F. Supp. 2d at 911 (noting that "a descriptive mark may be entitled to protection only if it has acquired secondary meaning").  Secondary meaning exists when a trademark "has come, through use, to be uniquely associated with a specific source."  Two Pesos, 505 U.S. at 766 n.4 (quotation omitted).  See also Burke-Parsons-Bowlby Corp. v. Appalachian Log Homes, Inc., 871 F.2d 590, 596 (6th Cir. 1989)(secondary meaning exists when "the attitude of the consuming public toward the mark denotes 'a single thing coming from a single source.'")(quotation omitted); Herman Miller, 270 F.3d at 311 (secondary meaning exists when upon seeing an article of merchandise, the consumer says, "That is the article I want because I know the source.")(quotations omitted).

In Burke-Parsons-Bowlby, the Sixth Circuit held that "secondary meaning must be established prior to others' use of a similar name."  871 F.2d at 596.  AE claims that it is impossible for Hollister to satisfy this requirement because the undisputed evidence shows that AE was using the number "22" on its merchandise no later than July of 1999, a year before Hollister was ever founded.  Hollister, however, claims that Burke-Parsons-Bowlby should be read to mean that secondary meaning must be established prior to others' *trademark* use of a similar name or, in this case, number.  Hollister then reasons that because, by AE's own admission, AE uses "22" in an ornamental manner and not as a trademark, it does not matter that

AE was using "22" before Hollister was founded.[4]  The Court agrees that Hollister's

interpretation of Burke-Parsons-Bowlby is preferable, particularly since trademark use by both

parties is required to prove trademark infringement.  See Rock and Roll, 134 F.3d at 753.  As

Hollister notes, the important question is not who first used the number, but who first acquired

secondary meaning and is, therefore, entitled to trademark protection.

In order to determine whether secondary meaning has been established, courts in the

Sixth Circuit look to seven factors: "(1) direct consumer testimony; (2) consumer surveys; (3)

exclusivity, length, and manner of use; (4) amount and manner of advertising; (5) amount of

sales and number of customers; (6) established place in the market; and (7) proof of intentional

copying."  Abercrombie, 280 F.3d at 640 n.14.  The burden of proof is on the party seeking

protection of the alleged trademark.  See Degidio, 191 F. Supp. 2d at 914.  That party need not

prove all factors and no one factor is determinative.  Herman Miller, 270 F.3d at 312.  However,

as noted in Burke-Parsons-Bowlby, a plaintiff in a trademark infringement case faces a

"substantial" burden in attempting to establish secondary meaning.  See 871 F.2d at 596.  See

also Thompson Med. Co. v. Pfizer, Inc., 753 F.2d 208, 217 (2d Cir. 1985)(noting "vigorous

evidentiary requirements" for establishing secondary meaning).

Direct consumer testimony and consumer surveys are perhaps the most persuasive

evidence that a trademark has acquired secondary meaning.  In this case, however, Hollister has

---

[4] Defendant notes that this line of reasoning puts Hollister in a bind.  There is no evidence that AE's use of the number "22" has changed over time.  Therefore, either: (1) AE uses the number "22" as a trademark, in which case Hollister's claims must be dismissed because Hollister cannot prove that secondary meaning was established prior to AE's trademark use; or (2) AE uses the number "22" in an ornamental fashion, in which case Hollister's claims must also be dismissed because, in order to succeed on a claim of trademark infringement, Hollister must show that both parties made a trademark use of that number.

submitted no direct consumer testimony or consumer surveys that would support a finding that consumers have come to associate the number "22" with Hollister.[5]  This is not particularly surprising since such direct proof is sometimes difficult to obtain.  Burke-Parsons-Bowlby, 871 F.2d at 596.  Nevertheless, such an association may be inferred from other, indirect evidence.

AE contends that the third factor – exclusivity, length and manner of use – weighs heavily against Hollister.  The Court agrees, especially with respect to the issue of exclusive use. Hollister and AE are not the only clothing retailers to use the number "22" on their merchandise. Among others, Aeropostale, Filene's, Gap Kids, Gadzooks, J.C. Penney, Kohl's, Lord & Taylor, Old Navy, Pulse, Sears, Terranova, and Weathervane all sell shirts emblazoned with the number "22."  (Ex. 5 to Remaklus Decl.).[6]  Hollister correctly points out that it is not precluded from enforcing its trademark rights simply because third parties are also using the mark.  But this misses the point.  The fact that so many other retailers are selling merchandise with the number "22" makes it much less likely that consumers have come to associate "22" with any one particular retailer.

The relatively short length of time that Hollister has been in existence and used the number "22" also weighs against a finding of secondary meaning.  Hollister first began using the

---

[5]  AE has presented evidence that would support a finding to the contrary.  Several authors of newspaper articles, in commenting about this suit, opined that when people saw the number "22," they were much more likely to think of NFL running back Emmitt Smith.  (Exs. 51, 52, 54 to Remaklus Decl.).  Hollister claims that these journalists' views are not necessarily reflective of the views of the general public.  This may be true.  However, absent any admissible evidence to counter their opinions, the Court will give them some weight.

[6]  Defendant also notes that many famous athletes, including NFL players Emmitt Smith and Duce Staley, and race car driver Bill Davis all have the number "22" on their uniforms.  In the Court's view, however, the athletes' use of the number "22" is not as relevant as is other clothing retailers' use of the same number.

number "22" on some of its merchandise in July of 2000.  While there is no magic length of time

after which secondary meaning is deemed to be established, courts have generally held that it

takes a number of years for consumers to develop the requisite association.  In Burke-Parsons-

Bowlby, the Sixth Circuit noted that other courts have held that three years was not long enough

to establish secondary meaning.  871 F.2d at 596 (citing WLWC Centers, Inc. v. Winners Corp.,

563 F. Supp. 717, 723 (D. Tenn. 1983)).  See also Degidio, 191 F. Supp. 2d at 915 (holding that

use of mark for only three years was insufficient); Platinum Home Mortgage Corp. v. Platinum

Fin. Group, Inc., 149 F.3d 722, 728 (7th Cir. 1998)(holding that use of name for only three years

was insufficient); Winning Ways, Inc. v. Holloway Sportswear, Inc., 913 F. Supp. 1454, 1471

(D. Kan. 1996)(holding that use of name for four years was insufficient); Investacorp, Inc. v.

Arabian Investment Banking Corp., 931 F. 2d 1519, 1525 (11th Cir. 1991)(holding that use of

mark for five years was insufficient to establish secondary meaning where there was "nothing

significant about the manner of appellant's use of the mark").  As to manner of use, the Court

notes again that while Hollister may use the number "22" on approximately 20% of its clothing,

it has not presented that number in any consistent manner.

The fourth and fifth factors concern the amount and manner of advertising, and the

amount of sales and number of customers.  In Burke-Parsons-Bowlby, the Sixth Circuit noted

that advertising expense and sales volume are relevant to the question of whether a mark has

acquired secondary meaning, and that "*extensive* advertising which results in consumer

association with a single source can establish secondary meaning."  871 F.2d at 596 (emphasis in

original).

In this case, Hollister has spent "approximately $1 million on advertising and promoting

23

its trademark 22" and has sold approximately $20 million in merchandise bearing the number

"22." (Stevenson Decl. ¶ 6). Hollister claims that this success is the "ultimate consumer

survey."[7] Nevertheless, the mere fact that advertising expenditures have generated sales is not

enough. Hollister must also show that the advertising actually resulted in consumer association

of the number "22" with a single source. Hollister has presented no admissible evidence that its

advertising efforts were effective in causing consumers to associate the number "22" with

Hollister. See Trustco Bank v. Glens Falls Nat'l Bank & Trust Co., 903 F. Supp. 335, 342

(N.D.N.Y. 1995); FM 103.1, Inc. v. Universal Broad. of New York, Inc., 929 F. Supp. 187, 196

(D.N.J. 1996)("[l]arge advertising or promotion expenditures do not contribute to establishing a

secondary meaning unless the moving party explains how its efforts were effective in causing the

relevant group of consumers to associate the mark with itself").

Mr. Stevenson and Mr. Brown both stated in their declarations that, in their opinions,

consumers had come to associate the number "22" with Hollister. The Court has excluded this

evidence. However, even if the Court were to consider these statements, they would carry very

little weight because Stevenson and Brown are both employees of Hollister. As the Ninth

Circuit noted in Filipino Yellow Pages, Inc. v. Asian Journal Publications, Inc., 198 F.3d 1143

(9th Cir. 1999):

> Evidence of secondary meaning from a partial source possesses very limited
> probative value. See, e.g., Norm Thompson Outfitters, Inc. v. GM Corp., 448 F.2d

---

[7] Mr. Stevenson claims that since its inception, Hollister has spent $4 million on
advertising and has amassed sales of nearly $500 million. (Stevenson Decl. at ¶ 4). The Court
notes that it appears that dollar-for-dollar, Hollister has achieved a significantly better return on
its general advertising expenditures than on its advertising targeted to merchandise bearing its
alleged trademark, the number "22."

1293, 1297 (9th Cir.1971) (finding that the testimony of the plaintiff's friend possessed "little value in establishing secondary meaning," insofar as testimony from persons closely associated with the plaintiff does not adequately reflect the views of the buying public); *In re Redken Labs., Inc.*, 170 U.S.P.Q. (BNA) 526, 529 (Trademark Tr. & App. Bd.1971) ("The statement by applicant's president that the term 'THE SCIENTIFIC APPROACH' has become distinctive of applicant's services is, at best, a self-serving statement which standing alone carries little weight in persuading us that the term in question functions as an indication of origin."). In *Self-Realization Fellowship Church*, 59 F.3d at 910, we found that declarations from a trademark plaintiff's employees and wholesalers had "little probative value regarding the assessment of consumer perception"; this is because "[t]rademark law is skeptical of the ability of an associate of a trademark holder to transcend personal biases to give an impartial account of the value of the holder's mark." This reasoning would apply *a fortiori* to testimony by the holder of the claimed trademark himself. In the case at bar, Jornacion's vague, uncorroborated, and clearly self-interested testimony did not create a genuine issue for trial as to whether "Filipino Yellow Pages" has acquired secondary meaning.

198 F.3d at 1152.

One of the factors to be considered in determining whether the advertising at issue has been effective in creating secondary meaning is whether that advertising stresses the alleged trademark. See First Brands Corp. v. Fred Meyer, Inc., 809 F.2d 1378, 1383 (9th Cir. 1987) (noting that advertising had not stressed the color or shape of the Prestone antifreeze jug whose trademark image plaintiff sought to protect). See also Ohio Art Co. v. Lewis Galoob Toys, Inc., 799 F. Supp. 870, 883 (N.D. Ill. 1992)("Secondary meaning cannot be established by advertising that merely pictures the product and does nothing to emphasize the mark or dress."); Platinum Home Mortgage Corp., 149 F.3d at 729 ("Evidence of advertising and sales is entirely circumstantial, and that evidence does not necessarily indicate that consumers associate a mark with a particular source, particularly when the advertisements and promotions do not specifically emphasize the mark."). Hollister has not presented any evidence to support a finding that its advertising specifically emphasized the number "22" in such a way that would lead consumers to

associate that particular number with Hollister.

The sixth factor requires the Court to look at whether Hollister has an established place in the market.  AE notes that Hollister's size and sales figures pale in comparison to AE.  The Court nevertheless finds that Hollister, while a relative newcomer, does have an established place in the  retail clothing industry as evidenced by its sales figures and continued growth.

The seventh, and final, factor, is proof of intentional copying.  There is no direct evidence of intentional copying, and certainly no admission on AE's part.  AE claims that it used surf and beach themes and the number "22" since before Hollister was founded.  (McGalla Decl. ¶ 3).    Viewing these factors as a whole, the Court must conclude that Hollister has failed to present sufficient evidence to support a finding that it has acquired secondary meaning in the number "22."  Hollister has presented no surveys and no testimony from even one consumer who claims to associate the number "22" with Hollister.  Many clothing retailers other than Hollister and AE use the number "22" on their merchandise, and Hollister has been in existence for a relatively short period of time.  Moreover, Hollister uses the number "22" on only 20% of its merchandise and does not present the number in any consistent style.  While Hollister may have spent $1 million on advertising merchandise bearing the number "22" and may have sold $20 million worth of such merchandise, there is no evidence that the advertising has emphasized the use of number "22" such that consumers would come to associate Hollister as the source of all merchandise bearing that number.  In the Court's view, Hollister has failed to establish the required nexus.

### 3.    Likelihood of Confusion

Finally, Defendant argues that Hollister cannot show a likelihood of confusion among

26

consumers as to the source of merchandise bearing the number "22."[8]  The Court need not address this argument.  As the Second Circuit noted in <u>Thompson Medical Co.</u>, "[w]here a mark is ineligible for protection, there is no need to examine likelihood of confusion.  Such an inquiry would, of course, be redundant, since a determination that a mark is ineligible for protection establishes that consumers do not associate that mark with a particular source."  753 F.2d at 216.  <u>See also</u> J. Thomas McCarthy, <u>McCarthy on Trademarks and Unfair Competition</u> § 15.11 (4th ed. 2001)(noting the interconnection between secondary meaning and likelihood of confusion); <u>Levi Strauss & Co. v. Blue Bell, Inc.</u>, 778 F.2d 1352, 1359 (9th Cir. 1985)(if there is no secondary meaning, there can be no likely confusion); <u>Blau Plumbing, Inc. v. S.O.S. Fix-It, Inc.</u>, 781 F.2d 604, 610 (7th Cir. 1986)(holding that court need not reach the question of likelihood of confusion unless it finds a trademark worthy of protection).

This Court has now held that, based on the evidence presented, no reasonable jury could find that either party has made a trademark use of the number "22," or that Hollister has acquired secondary meaning in the number "22."  The mark "22" is therefore ineligible for protection.  Although the parties have extensively briefed the issue of likelihood of confusion, there is no need for the Court to consider this alternative argument.

## IV.    Conclusion

For the reasons set forth above, Plaintiff's motion to strike the declaration of Theodore

---

[8]  The Sixth Circuit has identified eight factors to be considered in deciding whether a likelihood of confusion exists: (1) strength of the plaintiff's mark; (2) relatedness of the goods; (3) similarity of the marks; (4) evidence of actual confusion; (5) marketing channels used; (6) likely degree of purchaser care; (7) defendant's intent in selecting the mark; and (8) likelihood of expansion of the product lines.  <u>Abercrombie</u>, 280 F.3d at 646 (<u>citing</u> <u>Frisch's Restaurants, Inc.</u> <u>v. Elby's Big Boy</u>, 670 F.2d 642, 648 (6th Cir.1982)).

Remaklus (Record at 20) is **DENIED**.  Defendant's motion to strike portions of the declarations of Perry Brown and Michael Stevenson (Record at 25) is **GRANTED**.  Defendant's motion for leave to file a supplemental reply in support of its motion for summary judgment (Record at 31) is also **GRANTED**.  However, since the parties have already presented their arguments with respect to the issues raised in that supplemental reply, there is no need for the parties to re-file those briefs.

With respect to Defendant's motion for summary judgment, the Court denies the parties' request for oral argument.  Finding no genuine issue of material fact, the Court **GRANTS** Defendant's motion for summary judgment.  (Record at 9).  The Clerk is directed to enter judgment in favor of Defendant American Eagle Outfitters.

**IT IS SO ORDERED.**

Date: September 27, 2004                    **/s/ John D. Holschuh**
                                            John D. Holschuh, Judge
                                            United States District Court